# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**NELSON DANIEL GANDICA CHACON**                                            **PETITIONER**

**VERSUS**                                         **CIVIL ACTION NO. 5:19-cv-110-DCB-MTP**

**SHAWN R. GILLIS**                                                          **RESPONDENT**

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Nelson Daniel Gandica Chacon's Petition for Writ of Habeas Corpus [1] and his Motion for Humanitarian Release [20]. Having carefully considered the parties' submissions, the record, and the applicable law, the undersigned recommends that the Petition [1] be dismissed with prejudice and the Motion for Humanitarian Release [20] be denied.

## BACKGROUND

Petitioner Nelson Daniel Gandica Chacon is a citizen of Venezuela. *See* [15-1] at 1. On December 13, 2015, he attempted to enter the United States and was paroled[1] by U.S. Customs and Border Protection pending prosecution for conspiracy to import heroin. *Id*. Petitioner was placed in expedited removal proceedings. *Id*. On June 13, 2016, Petitioner was convicted in the United States District Court of the Southern District of Florida for conspiracy to import heroin in violation of 21 U.S.C. § 963 and imprisoned for forty-six months. *Id*.

---

[1] "Parole is not an admission into the United States…and does not provide the alien with any lawful status. When an alien is allowed to be paroled into the United States, he or she is still deemed to be an applicant for admission…and terminates automatically upon the expiration of the authorized parole period or upon the alien's departure from the United States." U.S. Citizenship and Immigration Services, https://www.uscis.gov/policy-manual/volume-10-part-b-chapter-2 (last visited Oct. 27, 2020).

On February 26, 2019, Petitioner was served a Notice and Order of Expedited Removal charging Petitioner under § 212(a)(7)(B)(i)(II) of the Immigration and Nationality Act ("INA") as a nonimmigrant who is not in possession of a valid non-immigration visa or border crossing identification card at the time of application for admission. *Id*. Following his release from imprisonment on April 15, 2019, Immigration and Customs Enforcement ("ICE") took custody of Petitioner. *See* [1] at 4.

Petitioner filed this Writ of Habeas Corpus [1] on October 21, 2019 asserting that he has been detained beyond the presumptively reasonable six months outlined in *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), after a final order of removal was issued. *See* [1] at 6. Petitioner also asserts that his continued detention violates his substantive and procedural due process rights guaranteed under the Fifth Amendment. *See* [1] at 6. On December 27, 2019, the Government responded arguing that Petitioner failed to meet his burden of proof, and there was a significant likelihood his removal would take place in the reasonably foreseeable future. *See* [7] at 3.

The controlling statute in this case, 8 U.S.C. § 1231(a)(1)(A), provides that the Attorney General has 90 days after an order of removal becomes final to deport an alien. The Supreme Court has held that detention of aliens beyond this 90-day period is acceptable up to six months. *Zadvydas*, 533 U.S. at 701. "After this 6-month period, once the alien provides good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing." *Id*. This does not mean that every alien not removed after six months must be released. *Id*. "To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

2

On May 12, 2020, after considering the Petition [1] and the Response [7], the undersigned filed a Report and Recommendation [11]. The Report and Recommendation [11] relied on the arguments set forth in the pleadings and utilized the standard under *Zadvydas* for a detainee held pending removal under 8 U.S.C. § 1231. *See* [11] at 2-5. The undersigned found that the Petitioner demonstrated that his removal was not likely in the foreseeable future, and the Respondent was unable to rebut Petitioner's showing. *See* [11] at 3-4. The undersigned recommended that the Petition [1] be granted, and that ICE either deport Petitioner or release him subject to appropriate conditions within 30 days of the Court's order. *Id*. at 5.

On May 26, 2020, Respondent filed a Motion [13] for Reconsideration of the Report and Recommendation along with an accompanying Memorandum [15] asserting, for the first time, that Petitioner is detained under 8 U.S.C. § 1225(b)(1), not 8 U.S.C. § 1231. *See* [15] at 7. Respondent attached as an exhibit a copy of the Expedited Removal Order issued pursuant to 8 U.S.C. § 1225(b)(1). *See* [15-1] at 1. Respondent argues that since Petitioner is an inadmissible alien subject to expedited removal proceedings under § 1225(b), the standard set forth in *Zadvydas* for aliens detained under 8 U.S.C. § 1231 does not apply. *See* [15] at 7. Respondent had not previously made this assertion, and therefore, the analysis in the initial Report and Recommendation [11] was inaccurate and incomplete.

On June 11, 2020, Petitioner filed a Response to the Motion for Reconsideration of the Report and Recommendation [18]. On June 18, 2020, Respondent filed a Reply [19]. On July 30, 2020, Petitioner also filed a Motion for Humanitarian Release [20] citing general concerns about COVID-19. Respondent filed a Response [23] on August 13, 2020. The undersigned has now reconsidered the pleadings under the appropriate statute and the following analysis adheres to the

3

controlling statutory scheme found in 8 U.S.C. § 1225(b)(1). This Report and Recommendation also addresses Petitioner's Motion for Humanitarian Release [20].

Respondent Gillis attached to his Response a Declaration from the Acting Assistant Field Office Director for Enforcement and Removal Operations, Robert Hagan. *See* [23-1]. The Declaration explains the efforts ACDC has made to handle the current COVID-19 health crisis. *Id*.

As of August 6, 2020, the date of the Declaration, there were six confirmed COVID-19 cases among detainees at ACDC. *Id*. at 4. All of those detainees arrived at the facility in July and were immediately placed into isolation pods separate from the general population. *Id*. Petitioner is not among the individuals residing in the housing unit with the detainees in quarantine. *Id*. ACDC has the capacity to house 2,300 detainees and, as of August 6, 2020, only housed 747 detainees. *Id*. Detainees who are identified as "at higher risk for severe illness" as determined by the facility based on CDC guidelines are given the option to be housed in a separate living area from the general population. *Id*. at 5. Petitioner makes no claims that he is at a higher risk of infection due to COVID-19 or that he will be impacted more severely than other similarly situated persons if he contracts COVID-19. *See* [20].

ACDC has also made efforts to increase the frequency of sanitization, including increasing the amount of liquid soap available and cleaning with bleach. *See* [23-1] at 6. All non-legal visits have been suspended at the facility, and legal visitors must wear gloves, masks, and eye-protection. *Id*. All staff and vendors must get their temperatures checked before entering the building and answer questions regarding exposure, symptoms, and travel history. *Id*. Respondent maintains that ACDC has taken sufficient steps to combat the health crisis and Petitioner is not entitled to habeas relief on the grounds that his health may be at risk.

## ANALYSIS

*Habeas Petition [1]*

As noted above, Petitioner argues that his continued detention is presumptively unreasonable under *Zadvydas*. However, the United States Supreme Court held in *Jennings v. Rodriguez* that the six-month time period described in *Zadvydas* does not apply to aliens detained pursuant to 8 U.S.C. § 1225. *Zadvydas*, 533 U.S. at 701; *see Jennings v. Rodriguez*, 138 S. Ct. 830, 844 (2018). The Petition [1] may be denied for that reason alone.

Respondent also maintains that since Petitioner is held under 8 U.S.C. § 1225, and therefore subject to expedited removal, this Court lacks jurisdiction to review the Petition [1]. *See* [15] at 5. "Any alien subject to the procedures under [Section 1225(b)(1)] shall be detained pending a final determination of credible fear of prosecution and, if found to not have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders." *Zadvydas*, 533 U.S. at 693. Aliens who arrive to the United States seeking entry are generally entitled only to those protections explicitly authorized by Congress, while aliens who have already entered the country are generally entitled due process protections prior to removal. *See Guzman v. Tippy*, 130 F.3d 64, 66 (2d Cir. 1997); *see also Zadvydas*, 533 U.S. at 693. As Petitioner was detained while attempting to enter the country, he does not receive the same protections as aliens who are legally present. The arguments made by Petitioner do not apply to him because he is in the category of aliens whose protections are limited by the purview of Congress. *See Guzman*, 130 F.3d at 66.

Judicial review of expedited removal orders is governed by 8 U.S.C. § 1252(e). *See Brumme v. I.N.S.*, 275 F.3d 443, 446 (5th Cir. 2001). Section 1252(e)(2) severely limits judicial review of decisions made under § 1225(b)(1). Section 1252(e)(2) provides:

> **(e)(2)** Judicial review of any determination made under section 1225(b)(1) of this title is available in habeas corpus proceedings, but shall be limited to determinations of—
>
> **(A)** whether the petitioner is an alien,
>
> **(B)** whether the petitioner was ordered removed under such section, and
>
> **(C)** whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 1157 of this title, or has been granted asylum under section 1158 of this title, such statute not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General to section 1225(b)(1)(C) of this title.

The reviewing court may determine whether a removal order "was issued and whether it related to the Petitioner. There shall be no review of whether the alien is actually admissible or entitled to any relief from removal." *Solis-de Patino v. Pitts*, 823 F. Supp. 2d 457, 460 (W.D. Tex. Oct. 4, 2011); *see also Brumme*, 275 F.3d at 447-48 (narrowly construing the avenues of review under § 1252(e) to the three instances articulated in the statute).

The statutory framework of Section 1252 precludes habeas review of Petitioner's petition. Petitioner admits to his status as an alien. *See* Petition [1]. Respondent provided documentation confirming Petitioner's Order of Removal under INA § 235(b)(1).[2] *See* [15-1] at 1. Additionally, Petitioner has made no attempt to prove that he is lawfully admitted for permanent residence, was admitted as a refugee under Section 1157, or was granted asylum under Section 1158. *See* 8 U.S.C. § 1252(e)(2)(C). Because this Court lacks jurisdiction to

---

[2] INA § 235(b)(1) is codified at 8 U.S.C. § 1225(b)(1).

review his Petition [1] and Petitioner is not entitled to the protections of *Zadvydas*, the undersigned recommends that the Petition [1] be dismissed with prejudice.[3]

*Motion for Humanitarian Release [20]*

Petitioner filed a Motion for Humanitarian Release [20] on July 30, 2020 in which he alleges a general fear of COVID-19.[4] *See* [20] 1-2. Respondent argues that Petitioner's COVID-19 allegations are conclusory and references several other cases where a similar argument for release based on general COVID-19 concerns has been rejected by this Court. *See* [23] at 2. While Petitioner is challenging his conditions of confinement which normally takes the form of a civil rights action, his requested relief is immediate release from detention.

Challenges to the duration of confinement should be brought as a habeas petition.[5] In the Fifth Circuit, challenges to the *conditions* of confinement should be brought as civil rights actions and challenges to the *duration* of confinement should be brought as habeas petitions.

---

[3] The Supreme Court held in *Jennings* that the plain language of 8 U.S.C. § 1225(b)(1) mandates detention for "further consideration of application of asylum." 138 S. Ct. at 844. Until that consideration is complete, the Court found "nothing in the statutory text imposes any limit on the length of detention." *Id*. at 842-43. The Court has not indicated if there is any amount of time where an alien being detained under 8 U.S.C. § 1225(b)(1) would be able to seek judicial review. *Id*. at 845.

[4] Petitioner also blames his continued detention on the United States' political relations with Venezuela claiming that the United States does not have any political relations with Venezuela. *See* [20] at 1. The government maintains that ICE "works with the official U.S.-recognized government of Venezuela." *See* [23] at 1-2. According to Petitioner, his mother is out of ICE custody on humanitarian parole. *See* [20] at 2.

[5] *Preiser v. Rodriquez*, 411 U.S. 475, 489 (1973). The United States Supreme Court held that a challenge by a prisoner to the fact or duration of his confinement and seeking an immediate or earlier release from that confinement must be pursued through a habeas corpus proceeding rather than in an ordinary civil rights action.

7

*Davis v. Fechtel*, 150 F.3d 486, 490 (5th Cir. 1998).[6] "Simply put, habeas claims involve someone's liberty, rather than mere civil liberty." *Id*. In his Motion for Humanitarian Release [20], Petitioner requests immediate release from detention, which effectively renders the motion as another ground or claim for habeas relief.

Petitioner did not provide any legal authority that establishes his entitlement to release. He states only that "I am afraid I will get sick being in detention since we have several cases of COVID-19 in this detention center that I am aware of." *See* [20] at 2. Shawn R. Gillis, Petitioner's custodian, filed his Response [23] on August 13, 2020 opposing Petitioner's Motion for Humanitarian Release [20]. Gillis attached to his Response a Declaration from the Acting Assistant Field Office Director for Enforcement and Removal Operations, Robert Hagan. *See* [23-1]. The Declaration explains the efforts ACDC has made to handle the current health crisis which are detailed above. *Id*.

To succeed with his Motion for Humanitarian Release [20], Petitioner must show that the conditions at ACDC violate the Constitution and amount to punishment of the detainee. *See Espinoza, et al. v. Gillis*, No. 5:20-cv-106-DCB-MTP, 2020 WL 2949779, at *3 (S.D. Miss.

---

[6] There is a disagreement among the circuit courts regarding the propriety of a conditions of confinement claim brought within a habeas petition. Several circuits follow the same approach as the Fifth Circuit and only allow habeas petitions that relate to the legality of the imposition or duration of confinement. *See Nettles v. Grounds*, 830 F.3d 922, 933 (9th Cir. 2016); *Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014); *Cardona v. Bledsoe*, 681 F.3d 533, 537 (3d Cir. 2012); *McIntosh v. U.S. Parole Comm'r*, 115 F.3d 809, 811 (10th Cir. 1997); *Graham v. Broglin*, 922 F.2d 379, 381 (7th Cir. 1991); *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004). Other circuits have held that habeas corpus petitions may challenge the conditions by which a sentence is imposed. *See Aamer v. Obama*, 742 F.3d 1023, 1036 (D.C. Cir. 2014); *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *Miller v. United States*, 564 F.2d 103, 105 (1st Cir. 1977).
   The Supreme Court recently stated that it has "left open the question whether [prisoners] may be able to challenge their confinement conditions via a petition for writ of habeas corpus." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1862-63 (2017).

June, 3, 2020). In order to make that determination, the Court must consider whether the detention of a petitioner and the conditions of the detention center are rationally connected to a legitimate governmental objective. *See Bell v. Wolfish*, 441 U.S. 520, 539 (1979).

"The Supreme Court has recognized that ensuring the presence of detainees at their immigration hearings along with the effective management [of] a detention facility once an individual is confined, constitutes legitimate governmental interests." *Espinoza*, 2020 WL 2949779 at *3; *see also Jennings*, 138 S. Ct. at 836; *Demore v. Kim*, 538 U.S. 510, 520-22; *Zadvydas*, 533 U.S. at 690-97.  The Government also has a legitimate interest in reducing flight risk posed by prisoners facing removal. *See Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 931 (W.D. Tex. 2018). Petitioner makes no showing at all that his detention is not rationally related to a legitimate government interest, but instead claims a general fear. *See* [20] at 2. This allegation falls far short of the required standard that his detention during the COVID-19 pandemic amounts to punishment.

The Court recognizes the risk COVID-19 poses to all detainees, but Petitioner's claim must be distinct in some respect. *See Martinez Franco v. Jennings*, No. 20-cv-02474-CRB, 2020 WL 1976423, at *3 (N.D. Cal. Apr. 24, 2020). The Fifth Circuit explained that "[t]he 'incidence of diseases or infections, standing alone,' do not 'imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks." *Valentine v. Collier*, No. 20-20207, 2020 WL 1934431, at *3 (5th Cir. Apr. 22, 2020) (*quoting Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009).

"[P]risoners are not entitled to release or transfer based solely on generalized COVID-19 fears and speculation." *Riggs v. Louisiana*, No. CV 3:20-0495, 2020 WL 2516577 (W.D. La. May 15, 2020). "[T]he Court cannot release every detainee at risk of contracting COVID-19

because the Court would then be obligated to release every detainee." *See United States v. Fitzgerald*, No. 2:17-cr-295-JCM-NJK, 2020 WL 1433932, at *2 (D. Nev. Mar. 24, 2020). While the undersigned is sympathetic to the many challenges faced by individuals during this health crisis, as detailed above, it appears that ACDC has taken meaningful steps to protect the detainees housed at the facility. Under the circumstances presented, Petitioner's release is not warranted.

### RECOMMENDATION

For the reasons set forth above, the undersigned recommends that Petitioner's Petition for Writ of Habeas Corpus [1] be DISMISSED with prejudice and Petitioner's Motion for Humanitarian Release [20] be DENIED. By separate order, the undersigned will grant the Respondent's Motion for Reconsideration of the Report and Recommendations [13]. The prior Report and Recommendation [11] will be withdrawn.

### RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge, and the opposing party. The district judge at the time may accept, reject, or modify in whole or in part, the recommendations of the magistrate judge, or may receive further evidence or recommit the matter to this Court with instructions. The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within fourteen days after being served with a copy shall bar that party, except on grounds of plain error, from attacking on appeal the proposed factual findings and legal

conclusions accepted by the district court to which the party has not objected. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

      THIS the 29th day of October, 2020.

                                                      s/ Michael T. Parker
                                                      United States Magistrate Judge